IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| GIGER WELDING AND FABRICATION, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:21-cv-00741-DGK |
| DFW MOVERS & ERECTORS, INC., | ) ) ) | |
| Defendant. | ) | |

## ORDER RULING ON MOTIONS IN LIMINE

This case involves alleged damage to a plasma cutter that was to be used for a welding business. Plaintiff Giger Welding and Fabrication, LLC ("Giger"), purchased a plasma cutter from an auction in Texas to assist with its welding business in Missouri. To get the plasma cutter to Missouri, Giger contracted with Defendants DFW Movers & Erectors, Inc. ("DFW"), and AFC Transportation, Inc. ("AFC"), to load and transport it on a semitruck. The plasma cutter was allegedly damaged during shipment. Giger then sued DFW, AFC, and other Defendants in state court to recoup damages for the repair of the plasma cutter as well as lost profits. The case was removed here, and DFW is now the only Defendant.

Pending before the Court are DFW's renewed motions in limine. ECF No. 243.

DFW seeks to exclude (1) the Matheson Welding Supply estimates to repair/retrofit the damaged plasma cutter and (2) both Giger's testimony about unaccepted bids in support of its alleged damages for lost profits and the bids themselves. The Court previously denied these motions because they were deficiently briefed. ECF No. 236 at 3.

For the reasons discussed below, the first motion is DENIED. The second motion is GRANTED IN PART and DENIED IN PART.

I.   **The Matheson estimates are admissible business records.**

DFW's first motion in limine seeks to exclude repair/retrofit estimates for the damaged plasma cutter prepared by Matheson Welding Supply ("Matheson") based on financial data supplied by ESAB, the manufacturer of the plasma cutter. DFW argues (1) the estimates are irrelevant, and therefore inadmissible, because the diminution of the value of the damaged plasma cutter, not the cost of repair, is the proper measure of damages; and (2) the estimates contain hearsay within hearsay with no applicable exception, because the information in the estimates was not supplied by Matheson but by ESAB, who has not been made available for cross-examination.

In response, Giger argues cost of repair is the proper measure of damages, and therefore relevant, because general principles of tort law seek to compensate a property owner who has suffered property damage for his "full actual loss." *See Gateway Foam Insulators, Inc. v. Jokerst Paving & Contracting, Inc.*, 279 S.W.3d 179, 184 (Mo. 2009). Giger testified that the fair market value for the plasma cutter was between $300,000 and $400,000, which is higher than the repair/retrofit estimates from Matheson ($216,326 in 2020; $274,100 in 2023). Repair would thus compensate Plaintiff for his full actual loss. As to hearsay, Plaintiff argues the estimates are admissible hearsay under Federal Rule of Evidence 803(6)'s business-records exception.

A.  **DFW has not shown the Matheson estimates are irrelevant.**

Evidence must be relevant to be admissible. Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Evidence of damages that is not relevant to the proper measure of damages should be excluded. *See Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.*, 73 F. Supp. 2d 997, 1006 (N.D. Iowa 1999) (excluding evidence because, among other things, it was not relevant to "the proper measure of damages").

"The ultimate test for damages is whether the award will fairly and reasonably compensate the plaintiff for his injuries." *Sampson v. Missouri Pac. R. Co.*, 560 S.W.2d 573, 588 (Mo. 1978). "A party should be fully compensated for its loss, but not recover a windfall. *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 54 (Mo. 2005) (citations omitted). The parties agree that the normal measure of damages for damage to personal property under Missouri law is diminution of value, i.e., "the difference between the fair market value before and after the event causing the damage." *Tull v. Hous. Auth. of City of Columbia*, 691 S.W.2d 940, 942 (Mo. Ct. App. 1985) (citing cases). They also agree that cost of repair "may be used" as the measure of damages when the property can be restored to its former condition at a cost less than the diminution in value. *Tull v. Hous. Auth. of City of Columbia*, 691 S.W.2d 940, 942 (Mo. Ct. App. 1985).

The evidence in the current record is too conflicting and indeterminate for the Court to rule, as a matter of law, on the fair market value of the plasma cutter before and after the damage. The one certain data point is the price Giger paid: $9,440. Giger estimates a value of between $300,000 and $400,000. Tim Roy, DFW's expert witness, gives a fair market value of $10,000 before the damage and a salvage value of $5,000 to $10,000 after the damage. ECF No. 243-4 at 11. Because of this wide discrepancy, the Court cannot determine the relationship between the fair market value and the cost of repair as a matter of law.

The Court is not convinced by Giger's argument that—as a matter of law—the cost of repair is the exclusive measure of damages here. Giger cites Missouri caselaw to support its argument that the lack of an active market in a certain kind of property makes cost of repair the appropriate measure of damages. ECF No. 247 at 3 (citing *Twin Chimneys Homeowners Ass'n v. J.E. Jones Const. Co.*, 168 S.W.3d 488, 503–04 (Mo. Ct. App. 2005)). But *Twin Chimneys* refers

to "certain categories of property that are not bought and sold on the open market[,] . . . [such as] school yards, church yards, college campuses, buildings under construction, and cemeteries." *Twin Chimneys*, 168 S.W.3d at 503. These bear no resemblance to the property at issue here. Giger may challenge the appraiser's methodology with respect to market comparisons on cross examination, but the Court cannot say on the current record that there was no active market by which the appraiser could determine a fair market value for the plasma cutter.

Neither is the Court convinced by DFW's argument that "[Giger] has not presented any evidence that the cost of repair is less than the diminution in value," such that cost of repair must be the appropriate measure of damages as a matter of law. ECF No. 243 at 6. First, it is not clear that Giger is required to do so at the motion in limine stage. *See Hendrix v. Magnolia Auto Sales, LLC*, No. 4:19-CV-2603 PLC, 2021 WL 9100411, at *5 (E.D. Mo. Sept. 24, 2021) (finding, on a motion in limine, that Missouri law does not require "a court [to] exclude evidence of repair costs if the plaintiff does not demonstrate the amount of diminution in value prior to trial"). Second, Mr. Giger, an experienced welder and owner who has purchased welding equipment in the regular course of his business for many years, gave his opinion under oath that the plasma cutter has a market value of between $300,000 and $400,000. ECF No. 247 at 4 (citing Giger Deposition). DFW's expert witness gave a post-damage value of between $5,000 and $10,000. This gives, on this basic evidence, a potentially alleged diminution in value of between $290,000 and $395,000, which is higher than the cost of repair estimates. The Court is not saying that this is the diminution in value. The Court is only saying DFW's argument that "there is no evidence in the case" to support a cost-of-repair measure of damages is unsupportable at this stage.

Neither party has clearly shown what the measure of damages should be as a matter of law, so the Court finds the Matheson estimates to be relevant at this time.

### B. The business-record exception applies to the ESAB information in the Matheson estimates.

DFW also challenges the admissibility of the Matheson estimates on hearsay grounds. The parties agree that the Matheson estimates are business records under Rule 803(6). DFW argues the estimates contain hearsay within hearsay because they contain statements and opinions by ESAB. According to DFW, while the estimates themselves could be admissible business records, the information in the estimates from ESAB is hearsay that does not fall under any exception. Giger responds that, under Eighth Circuit law, the Matheson estimates, with the ESAB statements, are admissible under the business-records exception to hearsay.

Hearsay is an out-of-court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay is inadmissible unless it falls under an exception. *Id.* 802. Hearsay within hearsay is admissible if each part of the combined statements falls under a hearsay exception. *Id.* 805. A business document with multiple sources of information contains hearsay within hearsay if "the source of information and the recorder of that information are not the same person." *United States v. Turner*, 189 F.3d 712, 719–20 (8th Cir. 1999). But "[i]f both the source and recorder of the information were acting in the regular course of the organization's business, . . . the hearsay upon hearsay problem may be excused by the business records exception to the rule against hearsay." *Id.* at 720. "[A] record created by a third party and integrated into another entity's records is admissible as the record of the custodian entity, so long as the custodian entity relied upon the accuracy of the record and the other requirements of Rule 803(6) are satisfied." *Smith v. SEECO, Inc.*, 922 F.3d 406, 412–13 (8th Cir. 2019) (citation and quotation marks omitted).

The proponent of hearsay evidence has the burden of showing an exception to the rule against hearsay applies. *See United States v. Two Shields*, 497 F.3d 789, 793 (8th Cir. 2007) ("It

5

was Two Shields's burden, as the proponent of the evidence, to establish that these [hearsay] exceptions applied."). If the proponent of the evidence shows the business-record exception applies, the opponent must show "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E). *See* Fed. R. Evid. 803, Advisory Committee Notes to 2014 Amendment [Subdivision 7] ("The Rule has been amended to clarify that if the proponent has established the stated requirements of the exception—set forth in Rule 803(6)—then the burden is on the opponent to show that the possible source of the information or other circumstances indicate a lack of trustworthiness.").

DFW argues ESAB, the source of the contents of the Matheson estimate, was "an outsider to the chain producing the business record" and therefore cannot be admitted under Rule 803(6)'s business-records exception. *See Grogg v. Missouri Pac. R. Co.*, 841 F.2d 210, 214 (8th Cir. 1988) ("If the source of the information . . . was an outsider to the chain producing [the] business record, [R]ule 803(6) by itself does not permit admission of the information provided by the outsider."). DFW also asserts "[t]here is no witness who has been disclosed in this case who can testify about the nature of the work described in the Matheson estimates or to establish the causal connection between the work described in the Matheson estimates and the damage to the plasma cutter as a result of the subject incident." ECF No. 243 at 9. Plaintiff replies that ESAB, the plasma cutter manufacturer, is not an outsider to the chain producing the estimate by Matheson, ESAB's authorized dealer and repair center.

Defendant points to a few statements from Matheson representative Deon Love that superficially suggest ESAB could be considered an "outsider" to the regular course of Matheson's business: Mr. Love "handed [the cost of repair estimate] off to ESAB," it was "all up to ESAB," "they're the ones that determine what needs to be done." ECF No. 243 at 8. But other parts of

Mr. Love's deposition show a more integrated relationship: "Matheson is an authorized distributor for ESAB. . . . Matheson has its own automation department, so we do setups on [plasma] tables like this, and then we also work with ESAB. So if we're selling an ESAB table, most of the time we use ESAB techs to come in and set it up." Love Dep., ECF No. 243-3 at 7.15–8.1. Matheson and ESAB typically diagnose problems with welding equipment together to generate Matheson's estimates, and they did so for Giger's plasma cutter. *Id.* at 9.25–11.19. When ESAB generated the numbers for the repair, it included Matheson's profit margin on the estimate. *Id.* at 15.20–24, 16.1–3. Apparently, sometimes Matheson does installation and training on ESAB equipment, but "if [Matheson is] not in a position to do it, [Matheson] will let ESAB come in and do it." *Id.* at 21.13–21. All of this indicates a high degree of integration in conducting business, diagnosing problems with equipment, performing repairs, and producing business records. Just as significantly, Mr. Love walked through the various replacement parts for the damaged plasma cutter at his deposition, explaining the scope of the work and the reasons for the proposed retrofit, all of which, according to his testimony, was within the scope of his profession. *Id.* at 20.4–21.12, 23.15–18.

Thus, Giger has sufficiently established that the business-records exception applies to the ESAB information in the Matheson estimates. It has shown, and the record indicates, that Matheson and ESAB have a closely integrated practice of producing estimates and performing repairs. ESAB (the source of the information) and Matheson (the recorder of the information) were acting in the regular course of Matheson's business in the production of the estimates. *See Turner*, 189 F.3d at 719–20. ESAB was not an outsider to the chain producing the Matheson estimates. *See Grogg*, 841 F.2d at 214. And Matheson relied on the accuracy of ESAB's estimate when it integrated it into its own record. *See SEECO, Inc.*, 922 F.3d at 412–13. DFW

has not shown that the information from ESAB or the circumstances of producing the estimates lack trustworthiness. The business-records exception to hearsay therefore applies to the Matheson estimates.

Accordingly, this motion is DENIED.[1]

## II. Giger may not rely on any reasons purportedly given by potential customers for their denials of Giger's work bids but may offer evidence of the bids themselves.

DFW's second motion in limine seeks to exclude Mr. Giger's hearsay testimony that potential customers did not accept his bids because of the lead time and cost required due to Giger not having use of the damaged plasma cutter. Defendant also seeks to exclude the bids themselves. Giger argues Mr. Giger, as the owner of the business, is entitled to give his lay opinion about the extent of his lost profits. His opinion is based, in part, on statements made by potential customers, so the statements should not be excluded. Giger argues the bids themselves are admissible to show that a market existed for its work and that this supports its claim for lost profits.

Statements made by Giger's potential customers to Mr. Giger as to why they did not accept its work bids are hearsay. *See* Fed. R. Evid. 801(c). To be admissible, Giger must show that these statements fall within an exception. *See* Fed. R. Evid. 802.

To do so, Giger relies on Fed. R. Evid. 701: "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's

---

[1] The Court also notes that DFW presents this hearsay argument for the first time in this motion. In its previous motion in limine seeking to exclude the Matheson Report, ECF No. 215, DFW argued Giger failed "to lay the foundation for the work described in the Matheson estimates." *Id.* at 5. As the Court noted in its order denying the previous motion in limine, DFW "fails to cite a single Eighth Circuit or Supreme Court case demonstrating why the evidence should be excluded under [the Rules of Evidence]." Order on Motions in Limine, ECF No. 236 at 3. DFW has now changed tack, and while DFW's supplemental motion in limine does cite Eighth Circuit authority, the Court, as noted above, is not persuaded by its argument and finds the attempt to introduce a novel evidentiary argument so late in the game to be disconcerting.

perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Giger further relies on the Advisory Committee Notes to Rule 701:

> most courts have permitted the owner or officer of a business to testify as to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. *See, e.g.*, *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) (no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business). Such testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business.

To be sure, Rule 701 allows Mr. Giger to offer an opinion about damages to Giger's business, including lost profits. *See S & H Farm Supply, Inc. v. Bad Boy, Inc.*, 25 F.4th 541, 549 (8th Cir. 2022) (allowing opinion testimony from business general manager about lost profits); *Hot Stuff Foods, LLC v. Houston Cas. Co.*, 771 F.3d 1071, 1079 (8th Cir. 2014) (allowing opinion testimony from president and CFO of company about lost profits). But Rule 701 is not a hearsay exception; neither do Giger's cited Eighth Circuit cases allow hearsay as a part of lay opinion testimony about lost profits. Giger has not shown that any hearsay exception applies to the purported statements from potential customers about their reasons for not accepting the work bids. The Court therefore excludes as inadmissible hearsay any statements from potential customers as to why they did not accept Giger's bids. Mr. Giger may offer his opinion as to damages, including lost profits under Rule 701, because of his particularized knowledge of Giger's business.

Giger's expert, Dr. William Rogers, who has submitted a report on economic damages, likewise may not refer to any statements from potential customers as to why they did not accept Giger's bids. Fed. R. Evid. 703 allows "an expert [to] rely on otherwise inadmissible hearsay evidence in forming his opinion if the facts and data upon which he relies are of a type reasonably

9

relied upon by experts in his field." *Brennan v. Reinhart Institutional Foods*, 211 F.3d 449, 450 (8th Cir. 2000) (citations omitted). But the hearsay statements in question here are not "of a type reasonably relied upon by experts in his field." Dr. Rogers is an economist whose expertise is limited, in this litigation, to calculations of damages based on information provided to him by Giger. Giger may not introduce otherwise inadmissible hearsay through its expert, when that expert's expertise is unrelated to the welding trade or the reliability of the alleged statements of potential customers.

Similarly, while the Court is allowing Mr. Giger to offer his opinion about lost profits under Rule 701, Dr. Rogers may not opine, as he does in his report, that he "believe[s] it is appropriate to identify [Giger]'s losses through the lens of lost productivity while awaiting the plasma cutter's replacement or repair." Dr. Rogers Report, ECF No. 201-1 at 5. This is an ultimate question of fact for the jury. Once Dr. Rogers explains how lost productivity and profits are calculated, the jury will be in a position to assess the appropriateness of lost profits as a measure of damages and apply Dr. Roger's testimony to Giger's claims. *See Harris v. Pac. Floor Mach. Mfg. Co.*, 856 F.2d 64, 67–68 (8th Cir. 1988) (citing Fed. R. Evid. 702 and affirming district court's "refus[al] to permit the plaintiff's expert witness . . . to give an opinion on [an] ultimate question of fact[,] . . . permitting the expert only to explain the criteria by which he would form such an opinion").

As to the bids themselves, Defendant argues they should be excluded as "irrelevant without further foundation from the persons or entities to whom they were submitted." ECF No. 243 at 13; ECF No. 255 at 10. Mr. Giger testified under oath that he gave bids to multiple potential customers in response to requests from those customers. Giger Dep., ECF No. 243-6 at 133.12–14. Giger argues these requests by willing purchasers support the claim for lost profits. ECF

No. 247 at 11. Insofar as the bids were produced in the ordinary course of Plaintiff's business, they appear to be business records and therefore admissible under Rule 803(6).

DFW's argument for irrelevance is misplaced and unsupported. DFW conflates foundation (Rule 901) and relevance (Rule 401) and offers no legal basis for its argument. The Court will not, therefore, exclude the bids at this time.

Consequently, this motion is GRANTED IN PART and DENIED IN PART. Giger and its expert witness shall not testify about the reasons purportedly given by potential customers for their denials of Plaintiff's work bids. But Giger and its expert may offer evidence of the bids themselves.

In making this ruling, the Court is not saying that the bids do, in fact, meet Missouri law's "difficult standard" for proving lost profits. *See Tipton v. Mill Creek Gravel, Inc.*, 373 F.3d 913, 918–19 (8th Cir. 2004) (summarizing Missouri law on lost profits). That will be an issue for the jury to decide.

## Conclusion

For the reasons discussed above, the first motion is DENIED. The second motion is GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED.**

Date:   February 10, 2026            /s/ Greg Kays
                                     GREG KAYS, JUDGE
                                     UNITED STATES DISTRICT COURT